**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**UNITED STATES CURRENCY IN the SUM OF SIX HUNDRED SIXTY THOUSAND, TWO HUNDRED DOLLARS ($660,200), More or Less, Defendant,**

**Sammy Khalil, Abdel Moniem Soliman, Claimants–Appellees.**

Nos. 06–4148–cv(L), 06–4338–cv(Con).

United States Court of Appeals,
Second Circuit.

July 2, 2007.

Douglas A. Leff, Special Assistant United States Attorney, (Elaine D. Banar, Varuni Nelson, Steven Kim, Assistant United States Attorneys, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Plaintiff–Appellant.

Steven L. Kessler, (Eric M. Wagner, on the brief), Law Offices of Steven L. Kessler, New York, NY, for Claimant–Appellee, Sammy Khalil.

Louis M. Freeman, Freeman Nooter & Ginsberg, New York, NY, for Claimant–Appellee, Abdel Moniem Soliman.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. CHESTER J. STRAUB and Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Plaintiff-appellant United States takes this appeal from orders of the United States District Court for the Eastern District of New York (Azrack, *M.J.*) enforcing a settlement agreement and awarding fees and costs to claimants. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented for review.

██ Settlement agreements are contracts, and disputes over such agreements are adjudicated "without regard to the validity of the underlying claim." *First Nat. Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir.1972) (internal quotation marks omitted). Even assuming that Article III standing is at issue, "[t]he party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Indeed, "it might very well be argued that, at least as far as Article III—as opposed to statutory—standing goes, the claimant bears no burden at all, as it is really the government which is invoking the power of the federal courts to effect the forfeiture." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 n. 9 (2d Cir.2002). But further assuming that the claimant bears some burden to demonstrate standing, "the only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required facially colorable interest" in the funds sought to be forfeited. *Id.* at 79. " '[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture.' " *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir.1999) (quoting *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir.1994)).

The record contains ample evidence of claimants' alleged ownership: (i) their verified claims assert "an interest in . . . the defendant property as he is one of the owners of the currency"; (ii) their interrogatory responses provide detailed evidence (including bank accounts and check amounts and numbers) tracing the seized funds to Khalil; (iii) Khalil's deposition testimony reiterates and explains his ownership interest in the money; and (iv) the deposition testimony of the U.S. Customs Service case agent, in which the agent acknowledges that "under any reading" of the documentary evidence, at least

$257,000 belongs to Khalil. The government was evidently satisfied that this evidence justified a settlement.

■ [2] The government challenges the refusal of the district court to consider—on a Rule 60(b) motion—evidence that the settlement would put in Khalil's hands money that will likely be used for finance terrorism. We review the denial of Rule 60(b) relief for abuse of discretion. *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 187 (2d Cir.2006). Rule 60(b) motions are "generally not favored[,] and [are] properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Broth. of Teamsters*, 247 F.3d 370, 391 (2d Cir.2001); *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir.1994) ("In extraordinary circumstances, Rule 60(b) may be invoked to override the finality of judgments in the interests of justice."). The court did not abuse its discretion by refusing to consider, *in camera*, the additional evidence offered by the government in support of its 60(b) motion.

[a] The government suspected from the outset that the seized funds were involved in financing terrorism. As the government itself explained in the district court:

> The facts surrounding the seizure of the [currency] bore all of the hallmarks of money being smuggled out of the country to finance terrorism. The suspicious manner of Khalil's investments with Soliman, much of which was in the form of paying credit card charges that Soliman had incurred, the method [by] which the attempted smuggling took place, and the inconsistent proffer statements of Soliman about how much of the [currency] belonged to him and Khalil respectively, made the circumstances doubly suspicious. But lacking contrary evidence at the time, the government chose to accept [c]laimants' sworn testimony.

Despite being "suspicious" and even "doubly suspicious" about claimants' sworn testimony, the government agreed to settle this action. The magistrate declined the government's invitation (as do we) "to second guess the decisions of AUSAs Knuckles and Weber [who] assessed evidence that the money was linked to terrorism, and nonetheless confirmed the settlement." *United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200), More or Less*, 423 F.Supp.2d 14, 34 (E.D.N.Y.2006). Strictly speaking, the evidence is not new: the government concedes that the alleged link to terrorism "is based upon both information discovered after the settlement discussions *and information of which the government had previously been aware.*" (Emphasis added).

[b] The government fails to explain, as it must under Rule 60(b), why the "newly discovered evidence" is of the sort "which by due diligence could not have been discovered" prior to the settlement. Fed. R.Civ.P. 60(b)(2); *see also State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir.2004) (requiring that a movant be "justifiably ignorant of the newly discovered evidence despite due diligence"). Where, as here, the movant fails to make even a "colorable claim" for Rule 60(b) relief, the district court is not required to consider evidence offered in support of that motion. *See Rothenberg v. Kamen*, 735 F.2d 753, 754 (2d Cir.1984) (*per curiam*).

■ [3] The district court awarded fees to Khalil pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). We note that it is presently an open question whether the Civil Asset Forfeiture Reform Act, 28 U.S.C. § 2465 ("CAFRA") displaces EAJA with respect to fees awarded in a civil forfeiture action,

and therefore whether any fee award to Khalil should have been made instead under CAFRA. However neither party raises this issue, so we deem it waived. *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Accordingly, we affirm the grant of fees and costs to Khalil.

■ The only issue adjudicated in this action relates to the failed attempt to smuggle the defendant currency out of the country stashed in boxes of crackers, baby wipes and oatmeal. No court has considered the evidence of a link to terrorism. As claimant's counsel conceded at argument, nothing in the proceedings of this case, or its settlement, would obstruct the government from taking any measures necessary to prevent funds from being deployed for any unlawful purpose. If, for example, the funds were owed as back taxes, one would assume that the government would secure it even after a determination (or settlement) that the taxpayer owned it before it was packaged for smuggling abroad. The only thing settled here is that Khalil owned some funds that were in a biscuit tin. The settlement does not authorize Khalil or anyone else to hold funds for (other) illegal purposes if a ground of forfeiture exists.

We have considered the government's remaining arguments and deem them to be without merit.

For the reasons set forth above, the orders of the district court are hereby **AFFIRMED.**